B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS** | **DEFENDANTS** |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 - Recovery of money/property - § 542 turnover of property
☐ 12 - Recovery of money/property - § 547 preference
☐ 13 - Recovery of money/property - § 548 fraudulent transfer
☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 - Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 - Injunctive relief - reinstatement of stay
☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et.seq.*
☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

☐ Check if this case involves a substantive issue of state law   ☐ Check if this is asserted to be a class action under FRCP 23
☐ Check if a jury trial is demanded in complaint              Demand $

Other Relief Sought

B1040

B1040 (Page 2) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. |
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B1040

Vincent Renda, Esq. (CSB#213985)
RENDA LAW OFFICES, P.C.
600 West Broadway, Suite #400
San Diego, CA 92101
Telephone: 619-819-0011
Facsimile: 619-819-0012
E-mail: vr@rendalawoffices.com

Attorneys for Plaintiff, W3 Investment Partners, LP

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. 16-05753-LT7 |
| PAUL Y. JOHNSON and CELESTE C. JOHNSON, | Chapter 7 |
| Debtors. | **COMPLAINT AND OBJECTION TO DISCHARGEABILITY OF DEBT PURSUANT TO SECTIONS 11 U.S.C. § 523(a)(2)(A); 523(a)(4); & 523(a)(6)** |
| W3 INVESTMENT PARTNERS, LP, | |
| Plaintiff, | |
| vs. | Adv. Pro. No: |
| PAUL Y. JOHNSON and CELESTE C. JOHNSON, | |
| Defendants. | |

Plaintiff, W3 Investment Partners, LP, by its attorneys, and by way of this Complaint to Determine Dischargeability complains of the Defendants/Debtors, Paul Y. Johnson and Celeste C. Johnson, and alleges:

### I.  PARTIES

1. Plaintiff, W3 Investment Partners, LP ("Plaintiff" or "W3") is, and at all times mentioned herein was, a California Limited Partnership duly organized and existing under the laws of the State of California and licensed to do business in the State of California, having its principle business office in the County of San Diego.

2. Defendant Paul Y. Johnson ("Defendant" or "P. Johnson") is, and at all times mentioned herein was, an individual with his principal residence in the County of San Diego, and is the debtor in the above-captioned Chapter 7 case under Title 11 of the United Stated Code, pending as Case No. 16-05753-LT7 (the "Main Case").

3. Defendant Celeste C. Johnson ("Defendant" or "C. Johnson") is, and at all times mentioned herein was, an individual with her principal residence in the County of San Diego, and is the debtor in the above-captioned Chapter 7 case under Title 11 of the United Stated Code, pending as Case No. 16-05753-LT7. (P. Johnson and C. Johnson shall be collectively referred to as "Defendants" or "Debtors").

## II.  JURISDICTION & VENUE

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334, 28 U.S.C. §157 and the Order of Reference entered by the District Court.

5. Venue is proper in this district by virtue of 28 U.S.C. §1409(a), as this proceeding arises in and relates to a case under the Bankruptcy Code that is pending in this district.

6. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

## III.  GENERAL ALLEGATIONS

7. Whenever allegations are made herein on information and belief, Plaintiff means that it has a present good-faith belief in the truth of the allegations and that the allegations are reasonably likely to be proven by information developed during discovery in this action.

8. In early to mid-2004, W3 invested $575,000.00 ("Capital Contribution") in a limited partnership named Sushi on the Rock Carlsbad, L.P., which was a restaurant/bar in Carlsbad, California, that operated under the name of Sushi on the Rock. The restaurant has ceased operations and is closed.

9. On or around September 30, 2004, W3, CEL J, Inc. ("CEL J" or "Defendants' Corporation"), W3, and five other individual investors, including Dave Kazubal, Bob Skoldberg, Frank Interlandi, Robert Griffith and Carlos Becerra, entered into a Limited

Partnership Agreement (the "Agreement") to govern the ownership, operation and financial structure of Sushi on the Rock.

10. Pursuant to the terms of the Agreement, W3's Capital Contribution was entitled to a 23% interest in the partnership.

11. CEL J was the General Partner of Sushi on the Rock. W3, Dave Kazubal, Bob Skoldberg, Frank Interlandi, Robert Griffith and Carlos Becerra were Limited Partners of Sushi on the Rock (collectively the "Limited Partners").

12. As the General Partner, CEL J was responsible for all operations and management of Sushi on the Rock and was vested with sole control over its financial transactions, including the distributions to the Limited Partners of partnership profits and returns on investments.

13. W3 and the other Limited Partners were entitled to a return of investment on their Capital Contribution, as follows:

  a. An Operating Account Reserve exists, which was represented to be an account holding all revenue generated from Sushi on the Rock's operations, less cash used to pay current operating expenses, including a General Partner management fee of $7,000.00 per month;

  b. Once the balance in the Operating Account Reserve reached $100,000.00, W3 was to begin receiving distributions, in proportion to its Capital Contribution, of all funds in the Operating Reserve Account in excess of $100,000.00. The distributions were to continue until a full return of W3's $575,000.00 Capital Contribution was made. During this period, the General Partner was not to receive a return on its investment, other than the $7,000.00 per month management fee;

  c. After a full return of the Capital Contribution was made, W3 was entitled to receive a preferred distribution, in proportion to its Capital Contribution, of all funds in the Operating Reserve Account in excess of $100,000.00, in an amount equal to 50% of its Capital Contribution, or $287,500.00. These distributions were to continue until W3 received the entire $287,500.00. Again, during this period, the General Partner was not

to receive a return on its investment, other than the $7,000.00 per month management fee. The General Partner was only entitled to receive a distribution based on its Capital Contribution after the Limited Partners, including W3, had been reimbursed for their Capital Contributions and their preferred returns;

    d. After payment of the Capital Contribution of $575,000.00 and the additional preferred return of $287,500.00 were made, W3 was entitled to receive 23% of all funds in the Operating Reserve Account in excess of $100,000.00.

14.    W3 was informed and believed that the Defendants intentionally failed and/or refused to make the required deposits of Sushi on the Rock's revenue into the Operating Reserve Account, had been improperly withdrawing and spending partnership funds for their personal benefit without authorization, had intentionally been producing inaccurate and misleading financial statements and had purposefully not been making required distributions to the Limited Partners, including W3.

15.    Therefore on or around January 4, 2006, W3 instituted a lawsuit against CEL J, Inc.; Celeste Johnson; and Paul Johnson (San Diego Superior Court Lawsuit – Case Number: GIC859273 – hereinafter the "State Court Lawsuit" – Attached hereto as Exhibit "A").

16.    The State Court Lawsuit further alleged the following:

    a. According to Sushi on the Rock's 2004 tax documents, W3 was entitled to receive distributions totaling approximately $200,000.00 in 2004. Instead, W3 received no distributions in 2004. W3 was informed and believed that this money was spent by and for the personal benefit of Defendants.

    b. In the Second Quarter (April, May and June) of 2004, the total withdrawals from Sushi on the Rock's partnership account exceeded the total expenses for operating and managing Sushi on the Rock by approximately $154,792.00.

    c. In the Third Quarter (July, August and September) of 2004, the total withdrawals from Sushi on the Rock's partnership account exceeded the total expenses for operating and managing Sushi on the Rock by approximately $181,281.00.

    d. In the Fourth Quarter (October, November and December) of 2004, the total

**COMPLAINT AND OBJECTION TO DISCHARGEABILITY OF DEBT**

withdrawals from Sushi on the Rock's partnership account exceeded the total expenses for operating and managing Sushi on the Rock by approximately $201,777.00.

    e. For the Fourth Quarter (October, November and December) of 2004, CEL J provided W3 with financial statements and an investor report for Sushi on the Rock. According to these documents, $30,000.00 was expensed as "Daily Working Capital" when all other expenses are itemized and supposedly accounted for. However, the money had never been accounted for and W3 was informed and believed that it was spent by and for the personal benefit of Defendants.

    f. In the First Quarter (January, February and March) of 2005, the total withdrawals from Sushi on the Rock's partnership account exceeded the total expenses for operating and managing Sushi on the Rock by approximately $238,270.00.

    g. For the First Quarter (January, February and March) of 2005 ("Q1-05"), CEL J provided W3 with financial statements and an investor report for Sushi on the Rock. According to these documents, Sushi on the Rock had a net income for Q1-05 of only $57,217.00. According to the Profit and Loss Statements for Q1-05, Sushi on the Rock should have had a reported net income of approximately $197,194.00. It appeared that $90,000.00 of the difference may have been expensed as "Daily Working Capital" when all other expenses are itemized and supposedly accounted for. However, this $90,000.00 had never been accounted for and W3 was informed and believed that it and the remaining non-accounted for net income for Q1-05 was spent by and for the personal benefit of Defendants.

    h. According to additional financial documentation, in August of 2005, W3 should have been distributed approximately $40,912.00, however, W3 received no distribution; in September of 2005, W3 should have been distributed approximately $23,889.00, however, W3 received no distribution; in October of 2005, W3 should have been distributed approximately $27,073.00, however, W3 received no distribution; in November of 2005, W3 should have been distributed approximately $30,207.00, however, W3 received no distribution; in December of 2005, W3 should have been

distributed approximately $31,192, however, W3 received no distribution.

i. According to Sushi on the Rock's 2005 Profit and Loss Statements, Sushi on the Rock had an approximate net income of $731,715.38 in 2005. According to the terms of the Agreement, this level of net income should have entitled W3 to approximately $363,000.00 in total distributions in 2005. Instead, W3 received distributions of only $20,466.04. W3 was informed and believed that the additional money that was not distributed to W3 was spent by and for the personal benefit of Defendants.

j. Additional financial records indicated the intentional withdrawal, transfer and depletion of Sushi on the Rock funds by Defendants that were not used for the benefit of Sushi on the Rock, but rather for the personal benefit of Defendants, including the following: 1) In January of 2005, $4,741.34 was used to pay a Verizon Wireless bill and $4,300.00 was used to make a Capital One payment (presumably a credit card payment); 2) In February of 2005, $3,655.00 was used to make two separate Capital One payments and $1,586.00 was spent at Onyx 1; 3) In March of 2005, $6,400.00 was used to make two separate Capital One payments, $1,370.89 was used to make a Mercedes Benz payment, $1,475.00 was spent at Voxx Ent. Inc., $689.00 was paid to Carol A. Hollan and $49.08 was paid to Union 76; 5) In April of 2006, $2,377.38 was spent on hotel rooms at the Mirage in Las Vegas, $1,798.50 was spent on rooms at the Bellagio in Las Vegas, $733.38 was spent on rooms at the Marriot in Anaheim, $776.60 was spent on Southwest Airlines tickets, $3,044.38 was used to pay a Verizon Wireless bill, $1,468.77 was used to make a Mercedes Benz payment, $250.00 was spent at Enterprise Rent-a-Car, $208.99 was spent at Vons, $61.50 was spent at the San Diego Sports Arena, $200.00 was paid to ABC Westlake and $50.00 was paid to Asurion Insurance; 6) In May of 2005, $435.00 was spent at Canyon Ranch in Las Vegas, $4,700.00 was used to make a Capital One payment, $281.32 was spent at various gas stations, $10,000.00 was spent as overdraft protection on an unidentified bank account, $2,914.40 was used to make two separate Mercedes Benz payments,

$1353.97 was spent at Enterprise Rent-a-Car, $200.00 was paid to ABC Westlake, $831.86 was spent on Lucky Brand Dungarees, $1,271.73 was spent at Z Gallerie, $1,441.42 was spent at Jeromes Furniture, $1,313.21 was used to make a payment to C. Johnson's Chase USA account, and $202.00 was spent at 3946 Fifth Avenue.

17.   In addition, the Quarterly Financial reports of Sushi on the Rock, prepared under the direct supervision and control of the Defendants, revealed that in July of 2005, $6,995.00 was paid in rent for the "La Jolla Restaurant." That restaurant was not associated with Sushi on the Rock in Carlsbad. Therefore, Sushi on the Rock funds were used to pay the rent of another restaurant.

18.   W3 was further informed and believed and alleged in the State Court Lawsuit that there were numerous other expenses, withdrawals, transfers and misappropriations of Sushi on the Rock funds by Defendants that had been used solely for their own personal benefit and that W3 was not aware of at that time.

19.   All of the funds described in the State Court Lawsuit should have been used for the benefit of Sushi on the Rock and/or deposited into the Operating Reserve Account so that distributions could have been made to the Limited Partners, including W3.

20.   The State Court Lawsuit contained thirteen (13) causes of action including fraud and breach of fiduciary duties. As a result of the State Court Lawsuit the Defendants entered into admissions of guilt on the fraud and breach of fiduciary duty claims. These admissions were approved in form and content in writing by Defendants' counsel in the State Court Lawsuit as well.

21.   Specifically in May of 2008, Defendants executed a settlement agreement, personal guarantees, and a stipulated judgment. The stipulated judgment in pertinent parts reads as follows: "Cel J, Inc., Celeste Johnson and Paul Johnson expressly agree, acknowledge and stipulate that the filing and/or entry of this stipulated judgment deems all allegations, statements and facts contained in the first-amended complaint to be true and accurate" (a true and correct copy of the stipulated judgment is attached hereto as Exhibit "B"). The stipulated judgment is executed by the Defendants and their counsel of record Mr. Kennan E. Kaeder,

**COMPLAINT AND OBJECTION TO DISCHARGEABILITY OF DEBT**

Esq. of the Law Office of Kennan Kaeder as to form and content.

22. The settlement agreement reads in pertinent parts as follows: "Celeste Johnson and Paul Johnson have further expressly agreed to and understand that all such obligations under the Agreement and the Stipulated Judgment shall be fully and entirely non-dischargeable and shall survive any liquidation proceeding, receivership proceeding, conservatorship proceeding, bankruptcy proceeding and/or any other similar proceeding" (a true and correct copy of the settlement agreement is attached hereto as Exhibit "C"). The settlement agreement is executed by the Defendants and their counsel of record Mr. Kennan E. Kaeder, Esq. of the Law Office of Kennan Kaeder as to form and content.

23. The guaranty of obligation and payments agreement of Paul Johnson reads in pertinent as follows: "Guarantor expressly agrees and acknowledges that the Settlement Agreement, the Guaranty and the Stipulated Judgment, including all debts and obligations thereunder, are directly related to and arise solely out of his fraudulent conduct, including his breaches of fiduciary duty, as specially alleged in W3's first-amended complaint…." (a true and correct copy of the guaranty of obligations and payments agreement of Paul Johnson is attached hereto as Exhibit "D").

24. The guaranty of obligation and payments agreement of Celeste Johnson reads in pertinent as follows: "Guarantor expressly agrees and acknowledges that the Settlement Agreement, the Guaranty and the Stipulated Judgment, including all debts and obligations thereunder, are directly related to and arise solely out of her fraudulent conduct, including her breaches of fiduciary duty, as specially alleged in W3's first-amended complaint…." (a true and correct copy of the guaranty of obligations and payments agreement of Celeste Johnson is attached hereto as Exhibit "E").

25. After default by the Defendants of material provisions of the above mentioned agreements, a Judgement was entered by this San Diego Superior Court against Cel J, Inc.; Paul Johnson; and Celeste Johnson on or around October 29, 2013 in the amount of $516,000.00. (A true and correct copy of the Judgment is attached hereto as Exhibit "F").

**COMPLAINT AND OBJECTION TO DISCHARGEABILITY OF DEBT**

26. The Debtors filed their underlying Chapter 7 bankruptcy case on September 20, 2016 (the "Petition Date").

### IV. AS AND FOR A FIRST CAUSE OF ACTION

### 11 U.S.C §523(a)(2)(A)

27. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this complaint, with the same force and effect as if fully set forth herein.

28. Pursuant to Bankruptcy Code 11 U.S.C. §523(a)(2)(A), the Defendants fraudulently incurred the debt that is subject to this adversary proceeding, and therefore, said debt must be deemed non-dischargeable.

29. The judgment debt owed by Defendants to Plaintiff is a debt arising from fraud and breach of fiduciary duty, as a result of the terms of the mutually executed settlement agreement, stipulated judgment and guaranty agreements. In addition said documents are also executed by Defendants' legal counsel as to both form and content.

30. Specifically and as a result of the State Court Lawsuit, the Defendants executed an admission of guilt as to all the allegations and claims in the Plaintiff's first-amended complaint. In doing so they admitted to the financial fraud which occurred in the operation and management of the Sushi on the Rock restaurant/bar in Carlsbad, California. This included misleading the investors, providing falsified financial and tax statements to investors, diverting corporate funds for personal use, diverting the revenue from one restaurant to pay unrelated debts/vendors of another restaurant, and more similar fraudulent activities. These allegations and claims are fully included in the first amended-complaint, filed by Plaintiff, and agreed to and admitted by Defendants in multiple court pleadings.

30. By reason of the foregoing, the debt owed to Plaintiff must be deemed non-dischargeable under 11 U.S.C. §523(a)(2)(A), and therefore, Plaintiff must be entitled to a judgment against the Defendants in an amount in excess of $516,000.00.

COMPLAINT AND OBJECTION TO DISCHARGEABILITY OF DEBT

## V. AS AND FOR A SECOND CAUSE OF ACTION

## 11 U.S.C §523(a)(4)

31. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this complaint, with the same force and effect as if fully set forth herein.

32. The Defendants acted as a fiduciary to the investors in the limited partnership. The Defendants were charged with the sole management and control of the restaurant/bar and all of its financial transactions. Moreover, they were paid a monthly management fee for acting as a fiduciary in this investment.

33. As such the investors trusted the Defendants, and the Defendants owed the investors a duty of care. In their capacity, the Defendants made false and misleading statements concerning the investment in general. This included but was not limited to: providing falsified financial and tax statements to investors, diverting corporate funds for personal use, diverting the revenue from one restaurant to pay unrelated debts/vendors of another restaurant, and more similar fraudulent activities. The Defendants made such false and misleading statements either intentionally or with reckless disregard to the harm likely to be caused to the investors.

34. Such acts constituted fraud or defalcation while acting in a fiduciary capacity, and, as such, the judgment debt, which the Defendants stipulated to in writing and affirmed by their legal counsel in form and both, is hereby non-dischargeable.

35. Thus, the Defendants' liability to the Plaintiff in an amount in excess of $516,000.00 should be excepted from their discharge pursuant to Section 523(a)(4) of the Bankruptcy Code.

## VI. AS AND FOR A THIRD CAUSE OF ACTION

## 11 U.S.C §523(a)(6)

36. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this complaint, with the same force and effect as if fully set forth herein.

37. As discussed above, the judgment debt arises from the Defendants' knowing and admitted acts of misleading investors, falsifying financial and tax documentation, wrongfully diverting company funds for personal use, and wrongfully diverting corporate revenue to pay the expenses of another restaurant. Such acts and omissions were a deliberate effort by the Defendants to injure the investors. These ill-advised and fraudulent actions were admitted by Defendants in writing and filed with the San Diego Superior Court. Moreover, the fraud and breach of fiduciary duty allegations and claims were affirmed by the Defendants' legal counsel as to both form and content.

38. Defendants knowingly and intentionally acted in such a willful and malicious manner so as to harm and damage the Plaintiff without justification. In doing the things herein described, Defendants' conduct was so willful, blatant, and malicious that punitive damages should be awarded to Plaintiff as part of this proceeding.

39. As a result, the Defendants' liability to the Plaintiff in excess of $516,000.00 should be excepted from their discharge pursuant to Section 523(a)(6) of the Bankruptcy Code.

## VII.  PRAYER

WHEREFORE, the Plaintiff prays for judgment as follows:

40. That the debt owed by Defendants to Plaintiff in excess of $516,000.00, plus interest thereon be determined non-dischargeable pursuant to 11 U.S.C. Sections 523(a)(2)(A); 523(a)(4); and 523(a)(6);

41. That the judgment debt, plus any additional interest and fees that may accrue thereon, is valid and can be enforced against any property belonging to the Debtors and any property to which they hold an interest, and that such debts are not discharged;

42. For attorneys' fees and costs incurred herein; and

///

///

**COMPLAINT AND OBJECTION TO DISCHARGEABILITY OF DEBT**

1      43.    For such other and further relief as this court deems just and proper.

Respectfully Submitted:

Dated: December 19, 2016    RENDA LAW OFFICES, P.C.

By:   /s/ Vincent Renda
        Vincent Renda, Esq.
        Attorneys for Plaintiff

**COMPLAINT AND OBJECTION TO DISCHARGEABILITY OF DEBT**