**CSD 3000A** [11/15/04]
Name, Address, Telephone No. & I.D. No.

Vincent Renda, Esq. (CSB 213985)
RENDA LAW OFFICES, P.C.
600 West Broadway, Ste. 400
San Diego, CA 92101
Telephone: 619-819-0011 Facsimile: 866-303-8383
E-mail: vr@rendalawoffices.com

*Order Entered on June 30, 2017 by Clerk U.S. Bankruptcy Court Southern District of California*

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| | |
|---|---|
| In Re<br>PAUL Y. JOHNSON and CELESTE C. JOHNSON<br>Debtor. | BANKRUPTCY NO. 16-05753-LT7 |
| W3 INVESTMENT PARTNERS, LP<br>Plaintiff(s) | ADVERSARY NO. 16-90186-LT |
| v.<br>PAUL Y. JOHNSON and CELESTE C. JOHNSON<br>Defendants(s) | Date of Hearing: June 7, 2017<br>Time of Hearing: 10:00 a.m.<br>Name of Judge: Laura S. Taylor |

**COURT MODIFIED**

**ORDER ON**

MOTION OF SUMMARY JUDGMENT FILED BY W3 INVESTMENT PARTNERS, LP

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through __12__ with exhibits, if any, for a total of __12__ pages, is granted. Motion/Application Docket Entry No. __13__

//
//
//
//

DATED: June 30, 2017

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

RENDA LAW OFFICES, P.C.
(Firm name)

By: Vincent Renda, Esq.
    Attorney for ☑ Movant ☐ Respondent

CSD 3000A

The motion of Plaintiff W3 Investment Partners, LP for summary judgment was heard before this Court on June 7, 2017. Attorneys Daniel W. Towson and Paul J. Delmore appeared on behalf of plaintiff, and attorney Keenan E. Kaeder appeared on behalf of defendants Paul Y. Johnson and Celeste C. Johnson.

The Court issued its tentative ruling on June 6, 2017, and a copy is attached to this Order as exhibit "A" **with modifications by the Court.**

After considering the pleadings, all relevant documents and evidence, arguments of counsel, and other matters presented to the Court,

**The Court decides this matter for the reasons set forth in the Tentative and on the record and after review of Dkt. #30. The Court required this filing at the summary judgment hearing; it is consistent with representations made in the summary judgment motion and at the summary judgment hearing.**

The Court's tentative ruling**, as amended,** is adopted as the final ruling, and plaintiff's Motion is GRANTED.

Furthermore, given that plaintiff filed a First Amended Complaint concurrent with the issuance of this Order, so that plaintiff's operative complaint contains a single claim for relief for nondischargeability pursuant to 11 U.S.C. section 523(a)(2)(**A**), this Order will serve as the FINAL JUDGMENT for this matter.

# EXHIBIT "A"

TENTATIVE RULING

ISSUED BY JUDGE LAURA S. TAYLOR

W3 Investment Partners, LP v. Paul Y. Johnson & Celeste C. Johnson, Adv. 16-90186-LT
(Paul Y. Johnson and Celeste C. Johnson, Bk. 16-05753-LT7)

Hearing Date/Time:   June 7, 2017 at 10:00 a.m.

MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF W3 INVESTMENT PARTNERS, LP

Dept. 3 Tentative:

The Court **Grants** this Motion.

**Factual Background**

    Cel J, Inc. was the general partner of a restaurant known as Sushi on the Rock Carlsbad, L.P., ("Sushi on the Rock").  Cel J, Inc.'s principals are the Debtors and Defendants in this adversary proceeding, Paul Y. Johnson and Celeste C. Johnson (Defendants).   Plaintiff was one of the limited partners in Sushi on the Rock.

    In 2006, Plaintiff and the other limited partners in Sushi on the Rock filed suit in the San Diego Superior Court against Cel J and Defendants for fraud and breach of fiduciary duty, among other claims, alleging that Defendants improperly diverted income from Sushi on the Rock for their personal use. Plaintiff's operative complaint alleged several causes of action against Defendants including Breach of Fiduciary Duty, Conversion, Fraud –Intentional Misrepresentation, Fraud – Concealment, and Fraud – False Promise.

    After litigating the matter for nearly two and one-half (2 ½) years, Plaintiff and Defendants reached a settlement, whereby Defendants agreed to repay Plaintiff $625,000 over a period of six and one-half (6 ½) years.  Specifically, the settlement required Defendants to pay no less than $2,000.00 per month for a period of five (5) years.  Thereafter, the remaining amount was to be paid in eighteen (18) equal monthly installments of roughly $28,000.00 per month.  As part of the settlement, Defendants executed personal guarantees and a Stipulated Judgment that was to be entered in the event that Defendants breached the Settlement Agreement.

    It is undisputed that Defendants entered into the Settlement Agreement, and that the Settlement Agreement provided that upon breach thereof, the Stipulated Judgment would be entered.  The Stipulated Judgment, which was attached to the Settlement Agreement provided:

1

> 3. Cel J. Inc., Celeste Johnson and Paul Johnson expressly agree, acknowledge and stipulate that the filing and/or entry of this stipulated judgment deems all allegations, statements and facts contained in the first-amended complaint to be true and accurate.

> 4. Cel J., Inc, Celeste Johnson and Paul Johnson expressly agree, acknowledge and stipulate that this judgments is directly related to and arises solely out of their fraudulent conduct, including their breaches of fiduciary duty, as specifically alleges in the first-amended complaint.

It is undisputed that Defendants breached the Settlement Agreement. Upon the breach Plaintiff sought entry of the Stipulated Judgment by the state court. For reasons no one has shared with the Court, the Stipulated Judgment was not entered. However, a form stipulated judgment (the "Judgment") was entered and it contained comparable language:

> Defendants have stipulated/agreed that his (sic) judgment: (i) deems the first-amended complaint true and accurate; and (ii) it arises solely out of their fraudulent conduct, including breaches of fiduciary duties.

On September 20, 2016, Defendants filed their Chapter 7 bankruptcy and included the Judgment of Plaintiff as unsecured debt on Schedule F. Plaintiff contends that as a result of post-judgment fees and costs, Plaintiff's Judgment against Defendants now totals $558,147.00.

On December 19, 2016, Plaintiff filed an adversary proceeding against Defendants seeking to have its stipulated judgment deemed nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), & (a)(6).

Plaintiff **brought** a Motion for Summary Judgment seeking to have its judgment declared nondischargeable under 11 U.S.C §§ 523(a)(2)(A) and 523(a)(4).

## Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a factfinder might return a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, at 257. Bankruptcy

2

Rule 7056, which incorporates Federal Rule of Civil Procedure 56(e), provides that the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must respond with specific facts showing there is a genuine issue of material fact for trial. Absent such response, summary judgment shall be granted if appropriate. See *Celotex Corp. v. Catrett, supra*, at 326-27.

**Collateral Estoppel / Issue Preclusion**

Plaintiff **asked** the Court to give collateral estoppel effect to the facts alleged in the First Amended Complaint to which Defendants have stipulated.

Federal courts, including bankruptcy courts, must apply a state's law regarding collateral estoppel when deciding whether a state court judgment is entitled to issue preclusive effect. *Jung Sup Lee v. TCAST Comm., Inc. (In re Lee),* 335 B.R. 130, 136 (B.A.P. 9th Cir.2005). Applying California law, five elements must be met for the court to give collateral estoppel effect to a judgment: 1) the issue must be identical as the issue litigated in the prior proceeding, 2) the issue must have been actually litigated, 3) the issue must have been necessarily decided in the prior proceeding, 4) the decision in the prior proceeding must be final and on the merits, and 5) the party against whom preclusion will be applied must be the same as, or in privity with, the original party. *Cal–Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1123 (9th Cir.2003).* In addition, issue preclusion is only available under California law where it furthers the public policy underlying the doctrine. *In re Harmon,* 250 F.3d 1240, 1245 (9th Cir. 2001).

While stipulated judgments are not generally given collateral estoppel effect, where the record or the judgment evidences an intent by the parties for a judgment to be given collateral estoppel effect, a court can give effect to such a judgment. *In re Berr*, 172 B.R. 299 (B.A.P. 9th Cir.1994); *see Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 655 (B.A.P. 9th Cir.1998) ("[I]f the parties stipulated to the underlying facts that support a finding of nondischargeability, the Stipulated Judgment would then be entitled to collateral estoppel application.") This is because, under appropriate circumstances, the stipulated judgment is considered akin to a judgment entered after a trial on the merits of the proceeding. See *Needelman v. DeWolf Realty Co.*, 239 Cal. App. 4th 750, 759 (2015) (a stipulated judgment "is usually as conclusive a merger or bar as a judgment rendered after trial."); *Avery v. Avery*, 10 Cal. App. 3d 525, 529 (1970) ("The judgment of a court of competent jurisdiction entered upon a stipulation of the parties has the same effect as if the action had been tried on the merits."); see also *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 596 (2010).

The parties need only "manifest an intent to be collaterally bound by" the terms of the stipulated judgment. *Cal. State Auto. Ass'n Inter-Ins. Bureau*, 50 Cal. 3d at 664. To the extent that a party admits liability in a stipulated judgment, that party "can be collaterally estopped from relitigating liability" in a subsequent action. *Id.* By specifically stipulating on an issue of liability, the parties intend that "the ensuing judgment [will] collaterally estop further litigation on that issue. Were their intent otherwise, the parties easily could have expressly restricted the scope of the agreement." *Id*. at n.2.

3

For purposes of issue preclusion, the California Supreme Court has observed that there is a difference between stipulated judgments entered under California Code of Civil Procedure ("CCP") § 664.6 and compromise settlements entered under CCP § 998. See *Cal. State Auto. Ass'n Inter-Ins. Bureau*, 50 Cal. 3d at 664 & n.3. Entry of the former type of judgment is subject to the discretion of the trial court, and, thus, such a judgment is properly subject to issue preclusion. Id. at n.3. The trial court, however, "has no discretion to refuse to enter judgment in a properly accepted statutory offer to settle pursuant to section 998." Id. Therefore, applying issue preclusion to a CCP § 998 compromise is improper. See *id.*

In this case, the form stipulated judgment references, as relevant, CCP § 664.6. As a result, the stipulated judgment was an appropriate basis for a potential application of issue preclusion; it satisfied the "actually litigated" requirement.

The law on the use of prepetition stipulated judgments for the purposes of collateral estoppel can be distilled as follows. Prepetition, Debtors cannot stipulate to a general waiver of discharge. *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173 (9th Cir.2002). Debtors can, however, stipulate to facts which may be applied by the bankruptcy court in a nondischargeability action. *Ki O. Son v. Heung Ser Park*, 2010 WL 4807089 (N.D. Cal. Nov. 19, 2010). However, if the circumstances surrounding the stipulated facts indicate that the stipulation is more akin to a general waiver, it may not be appropriate for the bankruptcy court to accept the facts for the purposes of summary judgment. *See In re Wank*, 505 B.R. 878 (B.A.P. 9th Cir. 2014). The Court has reviewed the case law and the settlement in this case and **finds** that the facts to which Debtors stipulated may be given collateral estoppel effect for the purposes of summary judgment.

In the Court's view, this is not a case such as *In re Huang*, 275 F.3d 1173 (9th Cir.2002), in which the debtor agreed he would not file for bankruptcy protection, and that, if he did, the debt in favor of the bank evidenced by the settlement agreement would not be dischargeable. *Id.* at 1176–77. In that case the Ninth Circuit refused to enforce the terms of the agreement when the debtor nonetheless sought bankruptcy protection, holding that "it is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code." *Id.* at 1177 (quoting *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 651–54 (9th Cir. BAP 1998)).

Rather, this case is more akin to *Son v. Park*, in which the stipulated judgment "included findings of fraud, based on the facts admitted to by Son at the settlement hearing, and pursuant to the agreement that the judgment would be entered with a finding of fraud." The court in *Son v. Park* recognized the general rule and the exception:

> While stipulated judgments are not generally given collateral estoppel effect, where the record or the judgment evidences an intent by the parties for a judgment to be given collateral estoppel effect, a court can give effect to such a judgment.

2010 WL 4807089, at 5. The court went on to apply the rule to the facts:

4

> In this case, the settlement agreement hearing and the judgment itself both provide strong evidence that the parties intended the stipulated judgment to have collateral estoppel effect in any future proceedings as to the issue of fraud. At the hearing counsel for both Park and Son declared to the court that they intended the stipulated judgment, if entered, to survive bankruptcy, as a judgment resolving Park's fraud claim against Son. Son agreed that the admission of fraud and sufficient findings of fact supporting the fraud finding would be included in the stipulated judgment. The parties also indicated their intent that the settlement agreement and stipulated judgment would resolve all claims arising from this transaction.

2010 WL 4807089, at *5 (citations to the record omitted).

In our case the Judgment provides that the Defendants stipulated to the facts as set out in the First Amended Complaint and specifically to findings of fraud and breach of fiduciary duty. The Defendants signed the Guarantees that provided:

> Guarantor expressly agrees and acknowledges that the Settlement Agreement, the Guaranty and the Stipulated Judgment, including all debts and obligations thereunder, are directly related to and arise solely out of their fraudulent conduct, including her breaches of fiduciary duty, as specifically alleges in W3's the first-amended complaint…

The anticipated Stipulated Judgment provided:

> Cel J., Inc., Celeste Johnson and Paul Johnson expressly agree, acknowledge and stipulate that this judgments is directly relates to and arises solely out of their fraudulent conduct, including their breaches of fiduciary duty, as specifically alleges in the first-amended complaint.

At the hearing at which the Settlement Agreement was approved, Defendants were asked if they understood the terms of the Settlement Agreement and if they intended to be bound thereby, to which they replied "yes."

As in *Son v. Park*, these documents signed by Defendants clearly evidence an intent by the parties for a the judgment to be given collateral estoppel effect on the issue of **fraud**.

Unlike the case of *In re Wank*, the facts surrounding the Debtors' stipulation do not indicate that the parties meant the stipulation to be a general wavier of discharge. In *Wank*, the Panel explained:

> we agree with Wank that, given the circumstances surrounding his execution of the First Declaration in this case, and when viewed in light of the strong public policy prohibiting debtors from contracting with creditors to forego the protections of a bankruptcy filing, Wank's statements in the First Declaration must, at a minimum, be viewed with great skepticism. As a result, and considering the other facts in the record, we believe it was inappropriate for the bankruptcy court to grant a summary judgment to the Appellees based solely on Wank's statements

5

>    made in the First Declaration. There can be no doubt about the purpose for the First Declaration; it was drafted by the Appellees' counsel with a singular goal in mind. The First Declaration not intended to evidence that Wank was indebted to the Appellees—that goal was effectively accomplished by the terms of the Settlement Agreement. The First Declaration was also not designed to be effective for use by the Appellees in state court. Instead, the introductory paragraph of the First Declaration reveals the true intention of the drafters regarding Wank's statements: The purpose of this Declaration is to provide a factual basis to further the intention of the Plaintiffs and Defendants in this litigation to ensure that if I do not pay any or all of the Judgment on a timely basis and declare bankruptcy that the amounts due Plaintiffs for their investment in the [EIS], plus interest, of $1,100,000 shall not be discharged in bankruptcy. First Declaration at ¶ 1. Given the reasons for Wank's execution of the First Declaration, we think the reliability of the factual statements that follow is potentially tainted by the Appellees' motives. The document was solely intended to ensure that Wank could not obtain effective relief in bankruptcy. While, perhaps, some of Wank's factual statements could be trusted, to do so would require the bankruptcy court to weigh the credibility of those statements against the circumstances under which the First Declaration was executed. And while the bankruptcy court could properly evaluate the First Declaration in the context of a trial, it is a far different matter for the court to rely exclusively on Wank's "admissions" in the First Declaration as the sole basis for granting Appellees a summary judgment that Wank committed fraud. In our view, to grant a summary judgment in this fashion, and without a trial, undermines the Ninth Circuit's concern about giving effect to agreements motivated by a creditor's desire to insulate debts from discharge in bankruptcy, and encourages the sort of routine inclusion of such factual statements in settlement agreements the court was attempting to discourage.

505 B.R. at 889–90. The facts in the case at hand do not give rise to the same concerns. Most importantly, in our case the Defendants' stipulation to the facts in the First Amended Complaint were made at the time of the settlement and were relied upon by the state court when it entered the Judgment which included the stipulation to the facts, as opposed to the declaration in Wank which was only to be unsealed and presented in the event that the defendant filed for bankruptcy.

   Rather, the Court **finds** that Plaintiffs in the state court had properly alleged fraud claims against the Defendants; that the parties had engaged in mediation; and entered into the settlement to avoid the expense and risk of litigation. It appears that Plaintiffs required the stipulated facts not to deny Defendants a discharge in general, but to establish the fraud claims they had asserted in the complaint.

   The bottom line is that the Court **applies** issue preclusion to the facts stipulated to by the Defendants and apply those facts to the elements of a nondischargeability **claim** under § 523(a).

**The Guarantees**

6

The Court finds the Guarantees of little value in this context. As noted above, they help paint the picture that the parties intended that the judgment would be given collateral estoppel effect. However, they do not held establish nondischargeability for the purpose of this motion. The Judgment was entered in a single amount against the corporate Defendant Cel, Inc. and the individual Defendants. Thus, the Guarantees add no additional liability to the individual Defendants. The issue in this case is whether any liability under the Judgment is nondischargeable. To the extent that the stipulated facts establish a nondischargeable claim against the individual Defendants again the Guarantees add nothing. If, on the other hand, the stipulated facts establish a nondischargeable claim against one of the Defendants, but not the others, the Guarantees cannot be used to render the debt nondischargeable against the others.

**Plaintiff's Nondischargeability Claims**

### Section 523(a)(4) - Breach of Fiduciary Duty

The Fourth Cause of Action in Plaintiff's First Amended Complaint is for " Breach of Fiduciary Duty – As to CEL J, C. JOHNSON and P. JOHNSON." However, the allegations in support thereof are solely against Cel J, as the General Partner of Sushi on the Rock. There are no allegations of fiduciary duty as to the individual Defendants which could be used to establish an (a)(4) claim as against them for the purposes of summary judgment. As noted above, the Guarantees do not work to ascribe nondischargeability to the individuals. The Court **Denies** the Motion on the § 523(a)(4) claim.

### Section 523(a)(2)(A) – Fraud

Under § 523(a)(2)(A), a debt for money obtained by the debtor under "false pretenses, a false representation, or actual fraud" may be excepted from discharge. The Ninth Circuit has held that summary judgment is proper in considering an exception to discharge under § 523(a)(2)(A) if the proponent is able to show that there is no genuine issue of material fact as to each of the five elements of exception to discharge under that provision: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Turtle Rock Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir.2000).

Plaintiff's First Amended Complaint contains three claims sounding in fraud in support of which it alleges:

EIGHTH CAUSE OF ACTION (Fraud – Intentional Misrepresentation – As to CEL J, C. JOHNSON and P. JOHNSON)

74. Pursuant to the Agreement between W3 and CEL J, CEL J represented to W3 that CEL J is required to make certain deposits to the Operating Reserve Account and cause distributions to be made to W3, as described in paragraphs 15(a) - (d). It was further represented to W3 that CEL J

7

would have responsibility for the safekeeping and use of all Sushi on the Rock assets and funds and that it would not use these assets and funds in any manner except for the exclusive benefit of the Sushi on the Rock.

    75. The representations made to W3 that the required deposits would be made to the Operating Reserve Account, distributions would be made to W3 and that Sushi on the Rock assets and funds would be used exclusively for the benefit of the partnership were all entirely false. Instead, Sushi on the Rock assets and funds were and are being fraudulently used by CEL J, CELESE and P. JOHNSON for their own personal benefit and enjoyment, as evidenced by the fraudulent withdrawals, expenses and transfers described above in paragraphs 16 through 29.

    76. At the time that the representations were made, CEL J, C. JOHNSON and P. JOHNSON knew they were false and/or made the representations recklessly and without regard for their truth.

    77. CEL J, C. JOHNSON and P. JOHNSON intended that W3 rely on these representations in making their Capital Contribution to Sushi on the Rock and intended that W3 rely on these representations after Sushi on the Rock was operational.

    78. W3 did, in fact, reasonably rely on the above representations in that it would not have executed the Agreement if it had known that deposits would not be made into the Operating Reserve Account, distributions would not be made to W3 and that Sushi on the Rock assets and funds would not be used exclusively for the benefit of the Sushi on the Rock, but rather for the personal benefit of CEL J, C. JOHNSON and P. JOHNSON.

    79. As a direct and proximate result of the aforementioned acts of CEL J, C. JOHNSON and P. JOHNSON, it is herein alleged that W3 has been damaged in an amount to be proven at trial and has incurred and continues to incur costs and expenses including, but not limited to, consequential damages, litigation costs and reasonable attorneys' fees as provided under the Agreement.

NINTH CAUSE OF ACTION (Fraud – Concealment – As to CEL J, C. JOHNSON and P. JOHNSON)

    82. CEL J, C. JOHNSON and P. JOHNSON intentionally failed to disclose to W3 that they would not make the required deposits into the Operating Reserve Account, would not cause required distributions to be made to W3, as described in paragraphs 15(a) - (d) and that they intended to use Sushi on the Rock assets and funds for their own personal benefit and not for the exclusive benefit of Sushi on the Rock, as described above in paragraphs 16 through 29.

    83. W3 was unaware of the fact that CEL J, C. JOHNSON and P. JOHNSON intended not make the required deposits into the Operating Reserve Account, would not cause required distributions to be made to W3, as described in paragraphs 15(a) - (d) and that they intended to use Sushi on the Rock assets

8

and funds for their own personal benefit and not for the exclusive benefit of Sushi on the Rock, as described above in paragraphs 16 through 29. This deception was reasonably relied on by W3.

84. CEL J, C. JOHNSON and P. JOHNSON intended to deceive W3 by concealing the above facts in order to cause W3 to make a Capital Contribution to Sushi on the Rock and to continue its participation in Sushi on the Rock after it became profitable.

85. As a direct and proximate result of the aforementioned acts of CEL J, C. JOHNSON and P. JOHNSON, it is herein alleged that W3 has been damaged in an amount to be proven at trial and has incurred and continues to incur costs and expenses including, but not limited to, consequential damages, litigation costs and reasonable attorneys' fees as provided under the Agreement.

TENTH CAUSE OF ACTION (Fraud - False Promise – As to CEL J, C. JOHNSON and P. JOHNSON)

88. CEL J, C. JOHNSON and P. JOHNSON promised W3 that they would make the required deposits into the Operating Reserve Account, would cause required distributions to be made to W3, as described in paragraphs 15(a) - (d), that they would not use Sushi on the Rock assets and funds for their own personal benefit and that Sushi on the Rock assets and funds would be used solely for the exclusive benefit of Sushi on the Rock.

89. The above promise, and W3's reasonable reliance thereon, was important and essential to the transaction in that W3 would not have executed the Agreement or provided its Capital Contribution had it known that CEL J, C. JOHNSON and P. JOHNSON would not do as they had promised.

90. At the time CEL J, C. JOHNSON and P. JOHNSON made the above promises, they intended not to perform as promised and they have not performed as promised as the date of filing this Complaint. CEL J, C. JOHNSON and P. JOHNSON further intended W3 to rely on the above promises, because without its reliance, W3 would not have executed the Agreement or provided its Capital Contribution.

91. CEL J, C. JOHNSON and P. JOHNSON have not made the required deposits to the Operating Reserve Account, have not caused the required distributions to be made to W3, as described in paragraphs 15(a) - (d), and have used Sushi on the Rock funds for their own personal benefit and not for the exclusive benefit of Sushi on the Rock, as described above in paragraphs 16 through 27.

92. As a direct and proximate result of the aforementioned acts of CEL J, C. JOHNSON and P. JOHNSON, it is herein alleged that W3 has been damaged in an amount to be proven at trial and has incurred and continues to incur costs and expenses including, but not limited to, consequential damages, litigation costs and reasonable attorneys' fees as provided under the Agreement.

First Amended Complaint 15:26-19:5. Each of the claims also includes the allegation that "The conduct of CEL J, C. JOHNSON and P. JOHNSON was intentional and done without justification, with the intention of depriving W3 of property or legal rights or otherwise causing injury and was despicable conduct that subjected W3 to a cruel and unjust hardship in conscious disregard of W3's rights, so as to justify an award of exemplary and punitive damages." First Amended Complaint 19:6-9.

**Application of the stipulated facts to the elements:**

(1) **misrepresentation, fraudulent omission or deceptive conduct by the debtor:**

Defendants stipulated that they represented to Plaintiff that "the required deposits would be made to the Operating Reserve Account, distributions would be made to W3 and that Sushi on the Rock assets and funds would be used exclusively for the benefit of the partnership;" that they "intentionally failed to disclose to W3 that they would not make the required deposits into the Operating Reserve Account, would not cause required distributions to be made to W3… and that they intended to use Sushi on the Rock assets and funds for their own personal benefit and not for the exclusive benefit of Sushi on the Rock;" and that they "promised W3 that they would make the required deposits into the Operating Reserve Account, would cause required distributions to be made to W3…, that they would not use Sushi on the Rock assets and funds for their own personal benefit and that Sushi on the Rock assets and funds would be used solely for the exclusive benefit of Sushi on the Rock." The Court finds that Plaintiff has established the first element.

(2) **knowledge of the falsity or deceptiveness of his statement or conduct;**

Defendants stipulated that "At the time that the representations were made, CEL J, C. JOHNSON and P. JOHNSON knew they were false and/or made the representations recklessly and without regard for their truth;" that they "intended not [sic] make the required deposits into the Operating Reserve Account, would not cause required distributions to be made to W3,… and that they intended to use Sushi on the Rock assets and funds for their own personal benefit and not for the exclusive benefit of Sushi on the Rock;" and that "At the time CEL J, C. JOHNSON and P. JOHNSON made the above promises, they intended not to perform as promised." The Court finds that the stipulated facts satisfy this element even if the first allegation of knowledge which includes recklessness were not sufficient, the subsequent allegations make clear that Plaintiff alleged actual knowledge of falsity and Defendants stipulated thereto.

(3) **an intent to deceive;**

Defendants stipulated that they "intended that W3 rely on these representations in making their Capital Contribution to Sushi on the Rock and intended that W3 rely on these representations after Sushi on the Rock was operational;" that they "intended to deceive W3 by concealing the above facts in order to cause W3 to make a Capital Contribution to Sushi on the Rock and to continue its participation in Sushi on the

10

Rock after it became profitable;" and that they " further intended W3 to rely on the above promises, because without its reliance, W3 would not have executed the Agreement or provided its Capital Contribution." The Court **finds** that the stipulated facts satisfy this element.

(4) **justifiable reliance by the creditor on the debtor's statement or conduct**;

Defendants stipulated that: "W3 did, in fact, reasonably rely on the above representations in that it would not have executed the Agreement if it had known that deposits would not be made into the Operating Reserve Account, distributions would not be made to W3 and that Sushi on the Rock assets and funds would not be used exclusively for the benefit of the Sushi on the Rock, but rather for the personal benefit of CEL J, C. JOHNSON and P. JOHNSON."  The Court **finds** that the stipulated facts satisfy this element.

(5) **damage to the creditor proximately caused by its reliance on the debtor's statement or conduct**:

With respect to each of the fraud claims Defendants stipulated that "As a direct and proximate result of the aforementioned acts of CEL J, C. JOHNSON and P. JOHNSON, it is herein alleged that W3 has been damaged in an amount to be proven at trial and has incurred and continues to incur costs and expenses including, but not limited to, consequential damages, litigation costs and reasonable attorneys' fees as provided under the Agreement."   The Court **finds** that the stipulated facts satisfy this element.

## Coercion

Defendants argue that they were coerced into entering the Settlement Agreement by comments made by the mediating judge.  This argument was well dealt with by the court in *Provost v. Regents of Univ. of Cal.:*

> Plaintiff asserts that the stipulated settlement cannot be enforced because he was coerced into signing it by both defendants' counsel and his own.  He contends that, at the mediation, the mediator told him Regents would have criminal charges filed against him if he did not sign the stipulated settlement that night. His own lawyers informed him juries in Orange County "are pro-defense" and he had little chance of success at trial.  If he did prevail the award would likely be low. Without commenting on the substance of the alleged duress and coercion, which defendants unequivocally deny, we agree the court correctly determined the evidence plaintiff proffered in support of his claim was protected from disclosure by the mediation privilege.  (Evid.Code, § 1119, subd. (a).)28 Evidence Code section 1119 provides "[n]o evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled ..." and further "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." (Evid.Code,

> § 1119, subds. (a), (c).) "To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme, which includes [Evidence Code] sections 703.5, 1119, and 1121, unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." (*Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 15, 108 Cal.Rptr.2d 642, 25 P.3d 1117, fn. omitted.) "The Legislature decided that the encouragement *1303 of mediation to resolve disputes requires broad protection for the confidentiality of communications exchanged in relation to that process, even where this protection may sometimes result in the unavailability of valuable civil evidence." (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 136, 119 Cal.Rptr.3d 437, 244 P.3d 1080.) Plaintiff seizes on language in *Foxgate* that allows a party to "report obstructive conduct [in mediation] to the court." (*Foxgate Homeowners' Assn. v. Bramalea California, Inc., supra*, 26 Cal.4th at p. 17, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) But what plaintiff attempted to report was not conduct but communications. An example of conduct that was legally disclosed was a party's failure to attend court-ordered mediation. (*Campagnone v. Enjoyable Pools & Spas Service & Repairs, Inc.* (2008) 163 Cal.App.4th 566, 571, 77 Cal.Rptr.3d 551.) But the court strictly limited its ruling, holding that "reporting anything more may violate the confidentiality rules." (*Id.* at p. 572, 77 Cal.Rptr.3d 551.) Plaintiff emphasizes that the "conduct" was so egregious the confidentiality requirement could not "shield[ ]" it. But in banning any court-created exceptions to the statutory confidentiality protections, the Supreme Court emphasized that the Legislature had weighed the possibility of some unfair results against the strong public policy supporting mediation and come down on the side of mediation. (*Foxgate Homeowners' Assn., Inc. v. Bramalea California, supra*, 26 Cal.4th at p. 17, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) There is no exception for " 'good cause.' " (*Rojas v. Superior Court*, (2004) 3 Cal.4th 407, 423, 15 Cal.Rptr.3d 643, 93 P.3d 260.)

201 Cal. App. 4th 1289, 1302–03 (2011). The Court **will not** disregard the stipulated Judgment on this ground. If this were an issue, it would be one for the state court that entered the Judgment. The Court has considered whether the coercion argument raises a public policy challenge to issue preclusion and finds that it does not. See *In re Harmon,* discussed above.

12